UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VANESSA HILL, individually and on behalf of all others similarly situated,<br><br>v.<br><br>AHS MANAGEMENT COMPANY, INC. d/b/a ARDENT HEALTH SERVICES *et al.* | **Case No. 3:23-cv-01045-WDC-JSF**<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br><br>Magistrate Judge Jeffery S. Frensley |

# HILL'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO APPROVE SETTLEMENT

Respectfully submitted,


**PARMET LAW PC**
Matthew S. Parmet
TX Bar # 24069719
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**MORGAN & MORGAN, P.A.**
Kimberly De Arcangelis, Esq.
Florida Bar No.: 0025871
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email: kimd@forthepeople.com

**MORGAN & MORGAN – NASHVILLE, PLLC**
R. Burke Keaty, II
BPR#027342
801 Broadway, Suite 105
Nashville, TN 37203
(615) 514-4205
bkeaty@forthepeople.com

**Attorneys for Plaintiffs**

## TABLE OF CONTENTS


**A. SUMMARY ........ 1**

**B. FACTUAL & PROCEDURAL BACKGROUND ........ 1**

**C. THE SETTLEMENT AGREEMENT ........ 3**

**D. ARGUMENT & AUTHORITIES ........ 4**

1. The Parties have agreed to the terms of the Settlement Agreement. ........ 4
2. The Settlement represents a reasonable compromise of this litigation. ........ 6
   - 2.1. Factor 1: There was no fraud or collusion in reaching the settlement. ........ 6
   - 2.2. Factors 2-4: The case was settled during adversarial litigation. If not resolved, further, extensive litigation would follow. ........ 7
   - 2.3. Factor 5: The participants agree the Settlement is in the best interest of Plaintiff and similarly situated employees. ........ 8
   - 2.4. Factor 6: Because this is an FLSA settlement, there are no absent class members. ........ 11
   - 2.5. Factor 7: The public interest is served by settlement. ........ 12
3. Notice should issue to the proposed collective. ........ 12
4. The Court should allow a service award for the Named Plaintiff. ........ 12
5. Attorneys' fees and litigation expenses are part of the parties' settlement. ........ 14
   - 5.1. The requested fees are squarely within a reasonable percentage range. ........ 15
   - 5.2. Factor 1: Value of the benefit provided. ........ 18
   - 5.3. Factor 2: Value of services on an hourly basis. ........ 21
   - 5.4. Factor 3: Contingent nature of fees. ........ 27
   - 5.5. Factor 4: Society's interest in compensating successful attorneys. ........ 29
   - 5.6. Factor 5: Complexity of the litigation ........ 29
6. Plaintiff's counsel is entitled to recover reasonable costs and expenses. ........ 30

**E. CONCLUSION ........ 30**

## Table of Authorities

### Cases


*Andrews v. Pacific Process Systems., Inc.*, No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa. Nov. 30, 2017) ........ 24

*Animal Legal Def. Fund, Inc. v. Perdue*, 292 F. Supp. 3d 315 (D.D.C. 2018) ........ 24

*Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023) ........ 10

*Atkinson v. Trinity Health Corp.*, No. 2:22-cv-11284-DPH-KGA, ECF No. 28 (E.D. Mich. Mar. 21, 2024) ........ 9

*Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) ........ 21, 22, 29

*Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020) ........ 14

*Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989) ........ 28

*Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) ........ 27

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) ........ 15

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) ........ 21

*Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68, 73 (S.D. Ohio 1984) ........ 5

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001) ........ 6

*Caligiuri v. Symantec Corp.,* 855 F.3d 860 (8th Cir. 2017) ........ 13

*Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) ........ 13

*Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277 (W.D. Tenn. May 22, 2012) ........ 29

*Cochran v. Zeon D.P., LLC*, 638 F. Supp. 2d 759 (W.D. Ky. 2009) ........ 5

*Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008 (S.D. Ohio Jan. 25, 2011) ........ 28

*Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) ........ 17

*Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) ........ 27

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........ 10

*Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804 (W.D. Mich. 2003) ........ 27

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ........ 17

*Davide v. Marriott Int'l, Inc.*, No. 2023-CA-015629-XXXA-MB (Fla. 19th Cir. Ct. Nov. 15, 2024) ........ 9

*Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ....... 27

*Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ....... 22

*Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) ....... 7

*Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) ....... 9, 28

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ....... 5

*Faught v. American Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2012) ....... 16

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ....... 14, 29

*Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208 (S.D. Ohio Sep. 9, 2016) ....... 22

*Fugate v. Metro Transp. Grp., LLC*, No. 1:23-CV-00189-TAV-SKL, 2024 WL 4584918 (E.D. Tenn. Oct. 4, 2024) ....... 4

*Futrell v. Cargill, Inc.*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69 (D. Minn. Dec. 6, 2023) 9, 28

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ....... 15, 18, 19, 20

*Gaul v. Accura Health Ventures, LLC*, No. 4:22-cv-00154-SHL-HCA, ECF No. 62 (S.D. Iowa Nov. 12, 2024) ....... 9

*Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862 (N.D. Cal. 2007) ....... 14

*Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ....... 26

*Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023) ....... 10

*Harvey v. Community Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18, 2023) ....... 9

*Hawkins v. Middle Tennessee Pizza, Inc.*, No. 3:21-CV-00266, 2022 WL 337197 (M.D. Tenn. Jan. 19, 2022) ....... 4

*Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848 (M.D. Tenn. Apr. 15, 2020) ....... 21

*Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023) ....... 10

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....... 14, 18

*Hightower v. Waste Pro of Florida, Inc.*, No. 4:22-cv-00076-MW-MAF, ECF No. 39 (N.D. Fla. Sept. 23, 2022) ....... 24

*Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896 (W.D. Tex. Jan. 25, 2021) ....... 5

*Howard v. Ellis Moving & Storage, LLC*, No. 3:21-CV-00086, 2022 WL 1005304 (M.D. Tenn. Apr. 4, 2022) ....... 22

*Hughes v. Franciscan Alliance, Inc.*, No. 1:22-cv-00675, ECF No. 70 (S.D. Ind. Feb. 20, 2024) 9

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ....... 27

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ....... 19

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) ....... 21

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ....... 30

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) ....... 27

*In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ....... 27

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ....... 13

*In re Flint Water Cases*, 583 F.Supp.3d 911 (E.D. Mich. 2022) ....... 15, 18

*In re Lloyd's Am. Tr. Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....... 22

*In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891 (E.D. La. 2012) ....... 5

*In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005) ....... 27

*In re RJR Nabisco*, 1992 WL 210138 (S.D.N.Y. Aug.24, 1992) ....... 27

*In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391 (S.D. Fla. Aug. 5, 2013) ....... 16

*Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018) ....... 24

*Kibec v. Giant of Maryland, LLC*, No. 240701624 (Pa. Ct. Com. Pl.—Jun. 3, 2025) ....... 9

*Kincaid v. Pasha Atlanta, LLC*, No 1:23-cv-03592-TWT, ECF No. 123 (N.D. Ga. Jul. 30, 2025) ....... 25

*Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) ....... 5

*Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ....... 13

*L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 3d 713 (E.D. Tenn. 2019) ....... 25

*Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011)24

*Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021) ....... 21

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ....... 13

*Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023) ....... 9, 28

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) .................................19

*McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703 (W.D. Mo. Aug. 4, 2015) .....................................................................................................................13

*McGowan v. CFG Health Network, LLC*, No. 3:28-cv-02770-ZNQ-RLS, ECF No. 42 (D.N.J. Mar. 28, 2024) ........................................................................................................... 9

*Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022) ............................................................................................................... 4

*Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011)...............................27

*Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389 (W.D. Tenn. Oct. 13, 2020) .................................................................................................................23

*O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780 (W.D. Tenn. Dec. 22, 2020) ..........................................................................6, 12

*Osman v. Grube*, No. 3:16-cv-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) .......21

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) .......................... 14, 15

*Reed v. M3K, LLC*, No. 3:22-CV-175-KAC-DCP, 2023 WL 8440262 (E.D. Tenn. Dec. 5, 2023) ................................................................................................................................ 4

*Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) ............................................27

*Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ..................................................................................21

*Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) ............................................................................................................ 10, 28

*Sanders v. MPRI, Inc.,* No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009)........13

*Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019) .................................................................................................................11

*Santana v. Johnson Controls Inc.*, No. 2:23-cv-00930-NJ, ECF No. 50 (E.D. Wisc. Nov. 1, 2024) ................................................................................................................................ 9

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000) ..........18

*Smith v. Sodexo, Inc.*, No. 8:22-cv-00984-PX, ECF No. 54 (D. Md. Aug. 14, 2024)............... 9

*Solis v. Wexford Health Sources, Inc.*, 2:22-cv-00878-MLG-GBW, ECF No. 85 (D.N.M. Oct. 16, 2025) ..............................................................................................................9, 10

*Sorace v. Wells Fargo Bank, N.A.*, No. CV 20-4318, 2024 WL 643229 (E.D. Pa. Feb. 15, 2024) ...............................................................................................................................17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...........................................................16

*Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73 (S.D.N.Y. Dec. 2, 2022) .........10

*Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023).........10

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ..29

*Thornton v. Tyson Foods, Inc.*, No. 5:22-cv-05077, ECF No. 64 (W.D. Ark. Apr. 25, 2025)9, 10, 28

*Tyndall v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5597 (AAA, Aug. 12, 2024)..........25

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ..............................14

*Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738 (W.D. La. Feb. 25, 2022) .....................................................................................................10

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020).......................................................................................................12, 21

*Washington State Nurses Ass'n v. MultiCare Health Sys.*, 535 P.3d 480 (Wash. Ct. App. 2023)..17

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ....................................19

*Williams v. MGM–Pathe Commc'ns. Co.*, 129 F.3d 1026 (9th Cir. 1997)................................19

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ................................13

*Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) ........................................................................................................ 9

*Woorduff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) .....................................................................................................21, 28

*Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5595 (AAA, Aug. 12, 2024)............25

*Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5601 (AAA, Aug. 12, 2024)............25

**Statutes**

29 U.S.C. 216 .........................................................................................12, 14

**Other Authorities**

Denise N. Martin et al., *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions*, 122 STAN. J.L. BUS. & FIN. 121 (1999) .............................................18

Erin Mulvaney, THE WALL STREET JOURNAL, *Top Lawyers' Fees Have Skyrocketed. Be Prepared to Pay $3,400 an Hour.*, Feb. 19, 2026, *available at* https://www.wsj.com/business/lawyer-hourly-rate-bill-3400-807cf6ce?mod=hp_lead_pos3 .............................................22

FiercePharma, *Pfizer asks hourly staffers to return overpayments in aftermath of vendor's cyberattack: reports*, https://www.fiercepharma.com/pharma/pfizer-asks-staffers-return-overpayments-aftermath-timeclock-service-cyberattack (Apr. 1, 2022).........................16

The Oregonian, *Oregon hospital is asking its employees to repay $2 million mistakenly paid in wages*, https://www.oregonlive.com/business/2022/08/st-charles-hospital-asks-employees-to-repay-2-million-in-wages.html (Aug. 13, 2022)..................................................16

THOMSON REUTERS INST., Law firm rates in 2026, at *3, (on file with author), *available at* https://www.thomsonreuters.com/en-us/posts/legal/law-firm-rates-report-2026/ ......23

U.S. DEPT. OF JUSTICE, THE UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF COLOMBIA, Civil Division, https://www.justice.gov/usao-dc/civil-division (last accessed Jun. 4, 2023)....25

USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021)....2

Vanderbilt Law School, *Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court*, https://law.vanderbilt.edu/news/fee-matrix-developed-by-professor-brian-fitzpatrick-and-brooke-levy-22-adopted-by-federal-court/ (Feb. 7, 2023)....25

WSOC-TV, *Workers overpaid during cyberattack told they have to pay employers back*, https://www.wsoctv.com/news/local/workers-overpaid-during-cyberattack-told-they-have-pay-employers-back/CLPISHDASNAKLL4IIHQ4CTZ6XY/ (May 31, 2022)....16

## A. Summary

Vanessa Hill requests the Court approve the settlement reached in this Fair Labor Standards Act (FLSA) case. The Settlement Agreement represents the culmination of Hill's investigation, litigation, and negotiation. It completely resolves her, and the rest of the proposed collective's, claims at issue in this lawsuit.

Defendants (together, "Ardent") have defended the claims in this lawsuit and continue to deny any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue. Absent the settlement, Hill and the proposed collective's claims would remain subject to the inherent risks of litigation and trial. Instead of remaining exposed to these risks, the proposed settlement is fair and reasonable, and it will provide meaningful relief to Hill and the similarly situated employees of Ardent who opt-into the Settlement.

For these reasons, settlement of this matter is in the best interest of Hill and the proposed collective. Hill requests the Court approve the Parties' settlement, as reflected in the Settlement Agreement, including notice to the proposed collective, and dismiss the alleged claims with prejudice upon a filing of a stipulation of dismissal with prejudice by the parties as further discussed herein.

## B. Factual & Procedural Background

Ardent provides healthcare services across six states and 30 hospital systems. To track time for its hourly employees, calculate overtime, and process payroll, Ardent used Kronos, a cloud-based timekeeping and payroll system operated and maintained by the Ultimate Kronos Group, Inc. ("UKG").

UKG reported a cyberattack on the Kronos system beginning on or about December 11, 2021, which made Kronos inoperable. USA Today, *Ransomware attack on Kronos could*

*disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021). As a result of the Kronos cyberattack, Ardent was unable to access any timekeeping or payroll data stored or entered into the Kronos system related to payroll from November 28, 2021, to February 25, 2022 (the "Kronos Outage").

During its Kronos outage, Ardent at first utilized the last full payroll period from before the Thanksgiving holiday to calculate pay owed. It then switched to an alternative timekeeping system that required employees and managers to report time manually through Excel spreadsheets. Next, Ardent used its online helpdesk platform to create and set up a new timekeeping system that employees were instructed to use to submit their time until Kronos access was restored on a rolling basis to Ardent's facilities. Throughout the outage, employees were also instructed to report any pay errors so that they could be compensated. Hill and the proposed collective claim that despite these processes, they were not paid correctly and/or not paid on time during the outage. Ardent also determined that it had overpaid wages to non-exempt employees in the aggregate amount of $4,129,055 in connection with the outage.

On October 6, 2023, Hill brought claims to recover the unpaid wages, including overtime, and liquidated damages owed to her and Ardent's allegedly similarly situated employees as a result of the Kronos Outage. After substantial efforts between the Parties and their counsel, the Parties ultimately agreed to exchange information and participate in mediation to determine if this action could be settled on a global basis, in an effort to try to resolve this matter. The parties' first mediation was unsuccessful resulting in continued litigation until the parties agreed to attend a second mediation on December 5, 2025 with mediator Hunter Hughes. Although the parties did not reach a settlement at mediation,

Mr. Hughes made a mediator proposal that both parties subsequently accepted. Since that time, after substantial further work between the Parties and their counsel, the Parties were able to reach a final settlement as reflected in the Settlement Agreement.

### C. The Settlement Agreement

The Settlement Agreement has been filed as Exhibit A. The Settlement will provide a fair, reasonable, and adequate recovery to all non-exempt employees of Ardent who choose to opt-into it. Any of these current or former employees, who are non-exempt individuals working across the United States and who were impacted by the Kronos Outage during the pay periods affected by the Kronos outage, will be notified of, and are eligible to join, the Settlement.

Under the Settlement Agreement, Ardent will pay all collective members who were allegedly not paid correctly and/or allegedly paid late a proportional amount of the unpaid wages and a proportional amount as liquidated damages. Significantly, Ardent has now legally waived any right it may have to recover from FLSA Collective members any overpayments made as to each FLSA Collective member, a significant value to these collective members. Ardent contends this waiver is consistent with its prior business decision not to recoup any overpayments, but that decision was not previously a legally binding obligation.

The Settlement Agreement does not create any complicated claims process. Once the Settlement is approved, it will be administered by an independent settlement administrator, who will send the proposed notice and a reminder notice to all putative collective members via email and U.S. mail. To opt-into this case and obtain their settlement payments, putative collective members need only fill out and submit a form to opt-into the lawsuit. The settlement administrator will collect the opt-in forms so that the parties can submit them to the Court.

Opt-in plaintiffs will receive a check issued from a Qualified Settlement Fund (administered by the independent settlement administrator) which will be used to pay Collective Counsel's fees and expenses, and the cost of the settlement administrator. Collective Counsel will file the consent to join forms with the Court, as well as a list of names of the individuals who opted in. The Parties will then file a stipulation of dismissal with prejudice.

## D. ARGUMENT & AUTHORITIES

### 1. The Parties have agreed to the terms of the Settlement Agreement.

Sixth Circuit precedent allows, but does not mandate, judicial review of FLSA settlement agreements. *Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022). Although some courts in the Sixth Circuit have recently declined to review an FLSA settlement agreement for approval,[1] others have continued to review them for approval when requested by the parties. *Reed v. M3K, LLC*, No. 3:22-CV-175-KAC-DCP, 2023 WL 8440262, at *1 (E.D. Tenn. Dec. 5, 2023); *Fugate v. Metro Transp. Grp., LLC*, No. 1:23-CV-00189-TAV-SKL, 2024 WL 4584918, at *1 n.2 (E.D. Tenn. Oct. 4, 2024), *report and recommendation adopted*, No. 1:23-CV-189-TAV-SKL, 2024 WL 4584563 (E.D. Tenn. Oct. 25, 2024). This Court has reviewed FLSA settlement agreements in the past, and the Parties ask that it do so here. *Hawkins v. Middle Tennessee Pizza, Inc.*, No. 3:21-CV-00266, 2022 WL 337197, at *2 (M.D. Tenn. Jan. 19, 2022) (Crenshaw, C.J.)

"To approve a settlement, a court must conclude that it is fair, reasonable, and adequate and that the settlement resolves a bona fide dispute under the FLSA" *Id.* (internal

[1] *See, e.g.*, *Shelton v. Steam Logistics, LLC*, No. 1:24-CV-393, 2025 WL 3173664, at *4 (E.D. Tenn. Nov. 13, 2025) (discussing settlement approval in the Sixth Circuit).

quotation omitted). "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896, at *2 (W.D. Tex. Jan. 25, 2021) (quotation omitted).

The Parties have fully executed the Settlement Agreement. The Court has the authority to approve the settlement or decline approval—or even to suggest additional or modified terms that would meet with the Court's approval—but cannot modify the agreement itself. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Cochran v. Zeon D.P., LLC*, 638 F. Supp. 2d 759, 761 (W.D. Ky. 2009) ("While the Court … has broad discretion to approve a settlement, it may not simply impose changes upon or modify the terms of the settlement. Thus, the Court may not fashion its own settlement by highlighting certain provisions as fair or reasonable and striking others it finds unreasonable." (internal citation omitted)); *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68 (S.D. Ohio 1984) ("This Court does **not** have the power to order specific changes or modifications to be made in the agreement." (emphasis in original)); *accord Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th

Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014).

**2. The Settlement represents a reasonable compromise of this litigation.**

There is a strong presumption in favor of finding a settlement fair, particularly where it is the negotiated result of an adversarial proceeding. *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). The key question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). Although the class-action provisions of Federal Rule of Civil Procedure 23 do not apply to FLSA collective actions, courts have looked to the six factors used in class actions for evaluating FLSA settlement proposals: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinions of collective counsel and the claims representative; (6) the reaction of absent class members; and (7) the public interest. *See O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *7-8 (W.D. Tenn. Dec. 22, 2020) (collecting cases).

**2.1. Factor 1: There was no fraud or collusion in reaching the settlement.**

The Settlement was reached after the Parties and their counsel attended a full-day mediation with Hunter Hughes on December 5, 2025. The Parties mutually selected Mr. Hughes due to his knowledge and experience in employment matters, including cases arising under the FLSA. The case did not settle that day, however. Only after Mr. Hughes prepared a mediator's proposal did the parties then agree on the terms proposed by Mr. Hughes.

That settlement was preceded by a year of active litigation, which itself was preceded by an initial mediation with another mediator.

Thus, the settlement is a product of the extended negotiations between the Parties, including arms-length negotiation of counsel and mediation with Mr. Hughes. Simply put, there was no fraud or collusion by any participant. *See* Ex. B, Parmet decl.

### 2.2. Factors 2-4: The case was settled during adversarial litigation. If not resolved, further, extensive litigation would follow.

This case was settled during litigation between the Parties. "[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). Indeed, it was resolved only after substantial investigation and work by the Parties and their counsel. The work undertaken by Plaintiff and Plaintiff's counsel included:

- Investigation of Ardent and its management and structure;
- Review of Department of Labor database and records;
- Review of court records for similar or related cases involving Ardent and its related corporate entities;
- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;
- Reviewing Plaintiff's documents and production;
- Interviewing Plaintiff;
- Drafting, filing, and serving Plaintiff's original complaint;
- Conferring with Defendant's counsel and engaging in first round of mediation;
- Contested motion practice regarding Plaintiff's claims and Defendants' defenses, including Plaintiff's gap time claim, the tolling agreement, and Plaintiff's state law claims, through Defendants' motion for judgment on the pleadings and motion to dismiss;
- Drafting and sending Plaintiff's disclosures and discovery;

- Drafting and sending Plaintiff's discovery to Defendants;
- Reviewing Defendants' production, including time and pay data;
- Analyzing and processing data for Plaintiff and the putative collective's payroll, including creating a damage model for the data;
- Attending a second full-day mediation with Hunter Hughes; and
- Negotiating and finalizing the Parties' Settlement Agreement and approval documents.

If the case were not settled, there would be extensive work to come, including written discovery to and from all Parties and associated discovery disputes, certification of the FLSA collective, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA, Plaintiffs' damages, Ardent's good faith and willfulness, and decertification.

Under the unique facts presented by this case, the compromised settlement represents a fair compromise of the claims. Ardent planned significant defenses to all claims and damages in this case. The Parties therefore could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Plaintiff and the proposed collective. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiff in particular) recognized that the settlement represented a compromise of the range and certainty of damages.

### 2.3. Factor 5: The participants agree the Settlement is in the best interest of Plaintiff and similarly situated employees.

That this Settlement in the best interest of Hill and the putative collective is an opinion shared by both Plaintiff and Plaintiff's counsel. Ex. B, Parmet decl. Plaintiff's counsel has served as lead or co-lead counsel in numerous wage-and-hour collective and class actions. For

example, Plaintiff's counsel, Matthew S. Parmet, has successfully recovered unpaid overtime and associated damages on behalf of many workers, including many large-scale wage-and-hour class/collective actions. *See*, *e.g.*, Ex. B-1, Select Wage-and-Hour Settlements.

Here, Plaintiff's counsel has significant experience in litigating and resolving not only wage-and-hour claims generally, but also wage-and-hour claims related to the Kronos Outage particularly. *See*, *e.g.*, *Solis v. Wexford Health Sources, Inc.*, 2:22-cv-00878-MLG-GBW, ECF No. 85 (D.N.M. Oct. 16, 2025), *adopted by* ECF No. 86 (D.N.M. Dec. 2, 2025); *Kibec v. Giant of Maryland, LLC*, No. 240701624 (Pa. Ct. Com. Pl.—Jun. 3, 2025); *Thornton v. Tyson Foods, Inc.*, No. 5:22-cv-05077, ECF No. 64 (W.D. Ark. Apr. 25, 2025); *Knowling v. The GIANT Co., LLC*, No. 240702002 (Pa. Ct. Com. Pl.—Feb. 20, 2025); *Davide v. Marriott Int'l, Inc.*, No. 2023-CA-015629-XXXA-MB (Fla. 19th Cir. Ct. Nov. 15, 2024); *Gaul v. Accura Health Ventures, LLC*, No. 4:22-cv-00154-SHL-HCA, ECF No. 62 (S.D. Iowa Nov. 12, 2024); *Santana v. Johnson Controls Inc.*, No. 2:23-cv-00930-NJ, ECF No. 50 (E.D. Wisc. Nov. 1, 2024); *Smith v. Sodexo, Inc.*, No. 8:22-cv-00984-PX, ECF No. 54 (D. Md. Aug. 14, 2024); *McGowan v. CFG Health Network, LLC*, No. 3:28-cv-02770-ZNQ-RLS, ECF No. 42 (D.N.J. Mar. 28, 2024); *Atkinson v. Trinity Health Corp.*, No. 2:22-cv-11284-DPH-KGA, ECF No. 28 (E.D. Mich. Mar. 21, 2024); *Hughes v. Franciscan Alliance, Inc.*, No. 1:22-cv-00675, ECF No. 70 (S.D. Ind. Feb. 20, 2024); *Futrell v. Cargill, Inc.*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69 (D. Minn. Dec. 6, 2023); *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023); *Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18, 2023); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023); *Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023); *Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D.

Wisc. Apr. 20, 2023); *Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023); *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023); *Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023).

Because Plaintiff is represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Plaintiff's counsel's experience in, and knowledge of, wage-and-hour cases has been noted by various courts. *Solis*, No. 2:22-cv-00878-MLG-GBW, ECF No. 85, at *6 ("Class Counsel [Parmet Law PC and Morgan & Morgan] have significant experience litigating class actions under both the Fair Labor Standards Act ('FLSA') and New Mexico Minimum Wage Act ('NMMWA')."); *Thornton*, No. 5:22-cv-05077, ECF No. 64, at *5, 13 (commending the "skill, reputation, professionalism, and experience" of Parmet Law PC and Morgan & Morgan, and commenting that they "have shown themselves to be highly experienced in wage-and-hour disputes …."); *Harvey*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *2 (approving a wage-and-hour class action settlement and recognizing both Morgan & Morgan and Parmet Law PC as "experienced counsel familiar with the applicable facts and law"); *Stevens*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (acknowledging wage-and-hour plaintiffs' counsel, including Morgan & Morgan and Parmet Law PC, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation"); *Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738, at *4 (W.D. La. Feb. 25, 2022) ("Plaintiffs' counsel [including Matthew S. Parmet] is well known to the Court and has prosecuted many such [wage-and-hour] claims with similar professionalism and skill."),

*adopted by* 2022 WL 741698 (W.D. La. Mar. 10, 2022); *Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819, at *2 (W.D. La. Feb. 13, 2019) ("This case has been litigated by competent lawyers on each side who enjoy great respect in their field from both sides of the aisle. Counsel for Plaintiff [including Matthew S. Parmet] has appeared multiple times in this Court with success on most, if not all, occasions."), *adopted by* 2019 WL 1446481 (W.D. La. Mar. 29, 2019).

Plaintiff's counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Hill in light of the procedural posture of the case, the litigation risks, and the litigation costs to Plaintiffs. Ex. B, Parmet decl., at § D. The Parties have engaged in arm's-length and extended settlement negotiations. Ex. B, Parmet decl., at § D. Because the settlement is a fair and reasonable compromise given the considerations outlined above, the Court should approve the Settlement.

### 2.4. Factor 6: Because this is an FLSA settlement, there are no absent class members.

The settlement in this case resolves the claims at issue through only the FLSA's opt-in collective action mechanism, rather than Rule 23. Each putative collective member would receive a notice advising them of the settlement so they can decide for themselves whether to accept the settlement offered by Ardent. Thus, there are no "absent" class members because all plaintiffs must affirmatively opt-into the case, whether before or in conjunction with the settlement. *Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781, at *3 (N.D. Okla. Jan. 4, 2019) ("Unlike settlements of class actions, cases involving infants or incompetent persons, or settlements of non-bona fide disputes, FLSA claims are opt-in, meaning that the named Plaintiffs are represented by counsel and are actively engaged with

the litigation."). And because there is no preliminary approval stage, with notice to "absent" class members, there are not even any objections or exclusions the Court could consider, as in a proposed Rule 23 settlement. For this reason, Factor 6 is not triggered here.

**2.5. Factor 7: The public interest is served by settlement.**

The public interest is generally served by settlement of disputed claims. *O'Bryant*, 2020 WL 7634780, at *14. This is particularly true in claims, where there is a separate public interest in enforcing compliance with wage-and-hour laws. *See id.* Of course, every case carries inherent risk to litigant, and this case is no different. *See id.* And even where liability appears clear, settlement is still favored because it would conserve the parties and judicial resources. *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020). This factor therefore also weighs in favor of settlement.

**3. Notice should issue to the proposed collective.**

As part of the Settlement Agreement, the Parties consent for notice of this case and the Settlement to issue to the following collective, pursuant to the FLSA, 29 U.S.C. 216(b):

> All non-exempt employees, regardless of exact job, position held, or title, who were employed by Defendants and/or any of their affiliated entities in the United States from December 11, 2021 to February 17, 2022, who worked in a job position that used Kronos Private Cloud to track their hours or who would have used it but for the Kronos Outage.

The proposed notice provides information in clear and concise terms on the lawsuit itself, the Settlement collective, the terms and conditions of the Settlement, the relief the Settlement will provide collective members that opt-in, and the procedure for opting into the Settlement by cashing or depositing the enclosed checks.

**4. The Court should allow a service award for the Named Plaintiff.**

The terms of the Settlement allow the Named Plaintiff, Vanessa Hill, to receive a reasonable service award as set forth in the Settlement Agreement, to be paid from the gross

settlement amount for her role in initiating the investigation and litigation of this matter, serving as a claims representative, responding to counsel's questions, providing documents, reviewing discovery responses and data, participating in settlement discussions, reviewing the Settlement, and otherwise assisting counsel. The service award also provides consideration for a general release of all claims.

Courts routinely approve service awards to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of the class or collective action litigation. *See*, *e.g.*, *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 service award to each named plaintiff); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 service award to each named plaintiff); *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 service award to named plaintiff representative in wage-and-hour case). Service awards are intended to reflect the substantial work performed and risk undertaken by a lead plaintiff, and can often be substantial. *See*, *e.g.*, *Sanders v. MPRI, Inc.,* No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving service awards to helpful plaintiffs of up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving service award of $10,000 as being "well within the range of reasonable incentive awards"); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $50,000); *Glass v. UBS*

*Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. 2007), *aff'd*, 331 Fed.Appx. 452 (9th Cir. 2009) (approving $25,000 service awards to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 service award to lead plaintiff). "Given [Estevez's] active participation," a service award is reasonable. *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020).

**5. Attorneys' fees and litigation expenses are part of the parties' settlement.**

A portion of the Settlement is allocated to the payment of Hill and the putative collective's attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The Sixth Circuit "require[s] only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). When awarding attorneys' fees from a common fund, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results obtained." *Id.* The court may do so by utilizing the percentage

of the fund method, as Plaintiff proposes here, which "more accurately reflects the results achieved." *Id.*

In reviewing the award, the Court may consider the following factors: (1) the value of the benefit rendered to the plaintiff class/collective (that is, the results achieved); (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *on reconsideration in part*, 927 F. Supp. 1036 (S.D. Ohio 1996), *aff'd sub nom. Arthur Ray Bowling v. Pfizer, Inc.*, 103 F.3d 128 (6th Cir. 1996), *and aff'd*, 102 F.3d 777 (6th Cir. 1996).

### 5.1. The requested fees are squarely within a reasonable percentage range.

Hill requests the Court approve the attorneys' fees agreed upon under the settlement agreement as a percentage of the total common fund, which amounts to approximately 17% of the total monetary benefit obtained for the putative collective.[2]

"The Sixth Circuit instructs that the value of the benefit to the class is based 'on the **total** relief class counsel makes available to all the class members.'" *In re Flint Water Cases*, 583 F.Supp.3d 911, 947 (E.D. Mich. 2022) (emphasis added) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis altered)), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022).

The common fund here consists of the total potential benefit obtained for the collective of $7,029,055.00, which includes $2,900,000 in new funds and forgiveness of another

[2] The attorneys' fees equate to 40% of the new cash fund established under the settlement.

$4,129.055.00 in alleged overpayments to putative collective members. *E.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013).

In addition to the new cash fund, as part of the settlement, Ardent is waiving any legal right it may have to recoup overpayments from those collective members who join the lawsuit. Prior to the settlement, Ardent contends it made a business decision not to seek recoupment of the overpayments made to employees during the Kronos outage. However, Ardent's business decision was not part of any formal contractual arrangement and was not legally binding. Thus, but for this settlement, Ardent legally could have sought recoupment of these overpayments.

The Kronos outage resulted in many employers' having "net" overpaid certain employees. Many of these employers began to (and continue to) recoup these overpayments. *E.g.*, FiercePharma, *Pfizer asks hourly staffers to return overpayments in aftermath of vendor's cyberattack: reports*, https://www.fiercepharma.com/pharma/pfizer-asks-staffers-return-overpayments-aftermath-timeclock-service-cyberattack (Apr. 1, 2022); WSOC-TV, *Workers overpaid during cyberattack told they have to pay employers back*, https://www.wsoctv.com/news/local/workers-overpaid-during-cyberattack-told-they-have-pay-employers-back/CLPISHDASNAKLL4IIHQ4CTZ6XY/ (May 31, 2022); The Oregonian, *Oregon hospital is asking its employees to repay $2 million mistakenly paid in wages*, https://www.oregonlive.com/business/2022/08/st-charles-hospital-asks-employees-to-repay-2-million-in-wages.html (Aug. 13, 2022). At least one employer has successfully argued that it may have the right to claw back overpayments resulting from the Kronos outage,

because applicable federal law does not preempt state law regarding such overpayments. *Washington State Nurses Ass'n v. MultiCare Health Sys.*, 535 P.3d 480, 490 (Wash. Ct. App. 2023).

Undoubtedly, Ardent claims it made the business decision to forgo recoupment before the settlement. And Ardent may have workforce and public relations difficulties if it chose to renege on that decision. But the fact remains that, without this settlement, Ardent's "decision" would **not** be a contractual promise, and Ardent could be free to institute recoupment as to any or all potential collective members, as significant time to do so remains within the applicable statutes of limitations.

For example, many affected employees (and potential collective members) in this case worked in states such as New Mexico, Texas, and Oklahoma. Each of these states have a four-year statute of limitations on unjust enrichment claims. Thus, if Ardent relied on an unjust enrichment theory to seek recoupment of any alleged overpayment, it could have done so past the date of the settlement and—indeed—under Ardent's theory of the case, until it could determine the overpayment, which it contends was after the data was obtained and analyzed, which may not be for several more years.

In all, the legally enforceable forgiveness within the settlement is of great value and would not exist absent the settlement. *Sorace v. Wells Fargo Bank, N.A.*, No. CV 20-4318, 2024 WL 643229, at *10 (E.D. Pa. Feb. 15, 2024) ("'Debt forgiveness provides a valuable award to class members,' and forgiveness need not be considered a 'nonmonetary award that 'deserves careful scrutiny to ensure that it has actual value to the class.'" (cleaned up) (quoting *Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011)). "Courts frequently include debt forgiveness in the value of settlements." *Id.*; *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (holding that, while student loan

forgiveness might not "have the same value as cash in hand," it was of value given student credit reports would be cleared of default).

Thus, while Plaintiff's counsel's fees are comprised of 40% of the new cash funds obtained for the collective, the fees amount to only 17% of the overall gross settlement amount achieved for the collective, which is the proper measure for examining the benefit to the class or collective. *In re Flint Water Cases*, 583 F.Supp.3d 911, 947 (E.D. Mich. 2022) ("The Sixth Circuit instructs that the value of the benefit to the class is based 'on the total relief class counsel makes available to all the class members.'" (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis removed)), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022).

**5.2. Factor 1: Value of the benefit provided.**

When evaluating a claim for fees, the "most critical" factor is a party's success in the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In this respect, the settlement represents a significant success for Hill and the putative collective.

One court, undertaking an analysis of reasonableness of requested attorneys' fees in a class action, considered the comparative data regarding Rule 23 class settlements summarized by the National Economic Research Associates (NERA). *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000). An updated version of the NERA Study relied upon by *Shaw* showed that the average result achieved for class members was only 13.7% of claimed damages, and the median was only 11.9% of claimed damages. Denise N. Martin et al., *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions*, 122 STAN. J.L. BUS. & FIN. 121, 140 (1999). Measured against that standard, the settlement in this case is much higher.

Under the settlement, putative collective members who choose to join the settlement will receive direct cash payments representing a substantial recovery on their alleged damages, and will, in addition, be forgiven for any overpayments that Ardent may have had the right to recoup. Considering the risks of continued litigation, the settlement provides Plaintiffs with a significant percentage of their total alleged backwages and liquidated damages, as well as forgiveness of 100% of remaining unrecouped overpayments across the entire payroll outage period.

Under Hill's theory of the case, Hill and the putative collective have prevailed in securing valuable compensation for their claims. They acquired a settlement that provides recovery for Hill and each putative collective member. On the other hand, if Ardent's defenses were successful, the putative collective members would receive nothing.

The proper measure of the value of the settlement is generally the amount made available to the collective, even if the amount collected by participating collective members may be less.

While the Sixth Circuit has not adopted the "made available" standard as a "strict rule"—leaving the final analysis in the district court's discretion—its opinion in *Gascho v. Glob. Fitness Holdings, LLC*, indicates the "made available" analysis is appropriate **unless the settlement** sets up a settlement structure that **discourages claims**. 822 F.3d at 287-88.[3] "This

[3] *Gascho* explained that the Ninth and Second Circuits had set up such rules, awarding attorneys' fees on the entire fund "made available," regardless of the amount collected by plaintiffs. *Id.* at 283-84 (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *Williams v. MGM–Pathe Commc'ns. Co.*, 129 F.3d 1026, 1026–27 (9th Cir. 1997) (per curiam)). It also observed the Eleventh and Third Circuits' decisions consistent with that position, which did not adopt it as a rule. *Id.* (citing *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296–97 (11th Cir. 1999)).

respects the Supreme Court's position, as well as our own, that making claims available to all class members provides them with a benefit." *Id.* at 286-87. For example, some settlements might require burdensome claims processing, extensive documentation, or confusing claims forms and websites. *Id.* at 288. Such circumstances might warrant valuing "potential relief as different from money in the plaintiff's pocket." *Id.*

Here, no such concerns exist. First, the list of potential collective members is easy to define and notify, since all of them worked for Ardent and did so relatively recently. Second, they will all be provided at least some cash (with some also receiving debt forgiveness), instead of coupons or other non-monetary relief. Third, the claims process is straightforward and easy. The only thing a potential collective member need do to participate is submit a consent form—there is no documentation or additional step required. They can submit the form by mail or online through the third-party administrator.

This means Plaintiff's counsel has made readily available the relief to the Hill and the entire potential collective. Thus, Plaintiff's counsel has done the utmost to prioritize the direct benefit to the collective. *See Gascho*, 822 F.3d at 284. If a putative collective member chooses not to participate, it simply cannot be said to be due to a claims process that discouraged claims. It is no different than any other plaintiff (such as a personal injury claimant) who resolves their case and is provided a check (whether from the defendant or even from their own attorney's trust account), but who then elects not to cash the check.

Due to their work to make settlement funds readily available to the proposed collective, the correct measure for attorneys' fees here is the total value "made available" to the proposed collective.

### 5.3. Factor 2: Value of services on an hourly basis.

Hill and the collective's attorneys' fees in this case are well within precedent in the Sixth Circuit, and, in fact, are on the low end of that range. In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the collective's gross recovery. *Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *7 (W.D. Ky. Sept. 24, 2021) (awarding 40%); *Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848, at *2 (M.D. Tenn. Apr. 15, 2020) (same); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *1, 7-9 (E.D. Tenn. Mar. 8, 2018) (same); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *2 (S.D. Ohio Nov. 8, 2018) (same); *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (awarding 1/3); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *4-5 (N.D. Ohio Mar. 26, 2019) (same); *Woorduff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (Trauger, J.) (awarding 40% of new cash to collective, which was 19.66% of common fund); *Osman v. Grube*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district." (internal quotation omitted)). Thus, "The … percentage requested here is reasonable and appropriate in light of prevailing market rates and well below the 1/3 contingent fee percentage common in contingent fee plaintiffs' litigation." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) (approving 23%). Thus, importantly, even if the Court only considers the value of the cash settlement fund of about $2.9 million and does not include the value of the forgiveness to the putative

collective of up to $7.03 million, Plaintiffs' fee request is still within the range approved by courts in this District.[4]

A contingency award **may** be examined by performing a lodestar cross-check of the fee award. *Barnes*, 2019 WL 1614822, at *6. However, the cross-check is "not required." *Id.*; *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional."); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018) (specifying a lodestar cross-check of percentage of the fund fee award is "unnecessary").

Nonetheless, Plaintiffs' total lodestar fees are within a reasonable multiplier of the total fees sought. Ex. B, Parmet decl., at ¶¶ 41-43. Several years ago, this District recognized a $350 hourly rate as being "commonly awarded in recent FLSA cases in this district." *Howard v. Ellis Moving & Storage, LLC*, No. 3:21-CV-00086, 2022 WL 1005304, at *5 (M.D. Tenn. Apr. 4, 2022). Of course, looking at past fee awards ignores not only inflation, but also legal fee rate growth, which has "risen much faster than inflation for years now." Erin Mulvaney, THE WALL STREET JOURNAL, *Top Lawyers' Fees Have Skyrocketed. Be Prepared to Pay $3,400 an Hour.*, Feb. 19, 2026, *available at* https://www.wsj.com/business/lawyer-hourly-rate-bill-3400-807cf6ce?mod=hp_lead_pos3; *see also* THOMSON REUTERS INST., Law firm rates in 2026, at *3, (on file with author), *available at* https://www.thomsonreuters.com/en-

[4] Plaintiff's counsel's fee calculation is similar to—and, in fact, less than—other cases including debt forgiveness. For example, *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL 31663577, at *8 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003), plaintiff's counsel was awarded 28% of the **full common fund**, including **more than half of all cash** ($4.35m of the $8.5m fund), plus $1.3m in credit notes out of a $11.5m credit note fund.

us/posts/legal/law-firm-rates-report-2026/ (follow download instructions) (finding law firm rates beginning in 2020 have increased an average of 2.3% above inflation and have picked up pace every year since 2020, after averaging 1.5% above inflation from 2007 through 2019).

Federal courts in Tennessee have recognized hourly rates in FLSA cases ranging up from inflation-adjusted[5] amounts of $622.25 to $746.70 per hour for "Plaintiffs' top counsel."[6] *Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389, at *8 (W.D. Tenn. Oct. 13, 2020), *aff'd*, 17 F.4th 664 (6th Cir. 2021) (observing also that defendants' counsel charged rates ranging from $995.60 to $1,244.50 to $1,655.19 per hour).[7] And the mean compensation for attorneys is lower in the Western District of Tennessee than in this District.[8] Adjusting for this District, those same rates would range from a low of $695.33 to a high of $1,849.58 per hour.[9] Courts in even smaller markets have awarded similar hourly rates. For example, as part of a wage-and-hour settlement in the Western District of Oklahoma,[10] attorneys admitted between 2006 and 2008 were awarded hourly rates ranging from $350 to

---

[5] Inflation adjustments throughout this Motion are made using the Bureau of Labor Statistics' CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

[6] Inflation-adjusted from $500 and $600, respectively.

[7] Inflation-adjusted from $800, $1,100, and $1,330, respectively.

[8] The most recent occupational employment and wage estimate ("OEW") for the Memphis Metropolitan Area, encompassing the Western District of Tennessee, for attorneys was $148,920 per year. *See* U.S. Dept. of Commerce, Bureau of Economic Analysis, May 2024 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates, https://www.bls.gov/oes/2024/may/oessrcma.htm#T. This is **less than** the OEW for Nashville, encompassing the Division in which this matter is pending, which has an OEW of $166,410. *Id.*

[9] Locality adjustments throughout this Motion are made by comparing the localities using BEA's data.

[10] Oklahoma City, encompassing the Western District of Oklahoma has an OEW for lawyers of $124,270.

$475 back in 2011. *Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011). Adjusted for inflation, these awards would range from $502.47 to $681.93 today, and to $672.86 and $913.17 for this District.

Also in the Western District of Oklahoma, one of Plaintiff's counsel, Matthew Parmet,[11] was awarded fees at $395 per hour in *Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018). This would be $516.41 adjusted for inflation and $691.52 adjusted for this District. Mr. Parmet was awarded the same amount in the Western District of Pennsylvania,[12] in 2017, in *Andrews v. Pacific Process Systems., Inc.*, No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa. Nov. 30, 2017), which would be adjusted to $624.37 today for inflation, and adjusted to $688.18 for this District.

Regarding a reasonable hourly rate for Morgan & Morgan attorneys,[13] C. Ryan Morgan, was awarded fees at the rate of $600 per hour in *Hightower v. Waste Pro of Florida, Inc.*, No. 4:22-cv-00076-MW-MAF, ECF No. 39, at *11 n.8 (N.D. Fla. Sept. 23, 2022). Adjusted for inflation, this amount would be $655.08 today, and $783.41 for this District.[14] Less than two months ago, Mr. Morgan was awarded a rate of $625 per hour after a successful wage-and-hour jury trial in *Kincaid v. Pasha Atlanta, LLC*, No 1:23-cv-03592-TWT, ECF No.

---

[11] Hill has used Mr. Parmet as an example because he represents a reasonable average of the experience level of Plaintiff's counsel. Other members of Plaintiff's counsel's team have been practicing even longer.

[12] Pittsburgh, encompassing the Western District of Pennsylvania, has an OEW for lawyers of $150,980.

[13] C. Ryan Morgan and Andrew Frisch of Morgan & Morgan worked on this matter, but did not enter an appearance. An attorney need not enter an appearance to claim time worked on a matter. *E.g.*, *Animal Legal Def. Fund, Inc. v. Perdue*, 292 F. Supp. 3d 315, 319 (D.D.C. 2018) (collecting cases).

[14] Pensacola, encompassing the Northern District of Florida, has an OEW for lawyers of $139,150.

123, at *4 n.2 (N.D. Ga. Jul. 30, 2025). One year ago, Mr. Frisch was awarded an hourly rate of $650 per hour in a series of arbitrations in Puerto Rico. *Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5595, at *14 (AAA, Aug. 12, 2024); *Tyndall v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5597, at *14 (AAA, Aug. 12, 2024); *Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5601, at *14 (AAA, Aug. 12, 2024). Adjusted for inflation, this amount would be $669.12 today.[15]

Likewise, another useful metric is the *Fitzpatrick* (formerly *Laffey*)[16] matrix. *See L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 3d 713, 721 (E.D. Tenn. 2019) (using the *Fitzpatrick/Laffey* matrix, among other factors, to determine reasonable attorneys' fee rates). Fhe *Fitzpatrick* matrix, provides rates for attorney based on their years of experience. U.S. DEPT. OF JUSTICE, THE UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF COLUMBIA, Civil Division, https://www.justice.gov/usao-dc/media/1395096/dl?inline (last accessed Jan. 28, 2026). However, because the *Fitzpatrick* matrix is designed for the DC area,[17] it should be downward-adjusted for the District market area as follows:

| Attorney | Years in Practice | Matrix Hourly Fee | District-Adjusted Fee |
|---|---|---|---|
| Matthew S. Parmet | 16 | $ 806.00 | $ 611.33 |
| Kim De Arcangelis | 19 | $ 840.00 | $ 637.12 |
| C. Ryan Morgan | 20 | $ 850.00 | $ 644.71 |

[15] BEA did not release an OEW for lawyers in Puerto Rico in May 2024.

[16] The matrix was recently revised by, and renamed after, Vanderbilt Law School professor Brian Fitzpatrick. Vanderbilt Law School, *Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court*, https://law.vanderbilt.edu/news/fee-matrix-developed-by-professor-brian-fitzpatrick-and-brooke-levy-22-adopted-by-federal-court/ (Feb. 7, 2023).

[17] D.C. has an OEW for lawyers of $219,400.

| Attorney | Years in Practice | Matrix Hourly Fee | District-Adjusted Fee |
|---|---|---|---|
| Andrew Frisch | 25 | $ 892.00 | $ 676.56 |

Hill does not propose to settle the issue of what hourly rate should be used in this District for any specific attorneys in any specific case at this time. Hill presents this information to demonstrate their proposed attorneys' fees are well in line with a reasonable fee award. Plaintiff's counsel estimates that, to date, a total of at least 505 hours have been devoted by the attorneys working on this case. Ex. B, Parmet decl. Under Plaintiff's counsel's estimates, using a District-adjusted average hourly rate of $642.43,[18] this equates to a total current lodestar of $324,427.15.

Critically, even after approval, Plaintiff's counsel's time in this matter will continue to increase. Plaintiff's counsel will spend additional time fulfilling obligations under the settlement agreement, administering the settlement, and responding to putative collective members' and collective members' inquiries. These efforts may easily match or surpass the time Plaintiff's counsel has already devoted to this matter. At a reasonable estimate total hours of a minimum of 585 hours after administration, Plaintiff's counsel's lodestar would be at $375,821.55. *E.g.*, *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases). In all, Plaintiff's counsel's current lodestar has a 3.57 multiplier, which is already within the range of reasonableness and will continue to decrease as this case moves to completion (to 3.09

[18] This utilizes an average for all attorneys of the *Fitzpatrick* rates only, downward-adjusted for this District. The adjusted *Fitzpatrick* rates are consistent with, if not less than, the awards outlined above.

based on Plaintiff's counsel's estimates above). *E.g.*, *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98–2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) (5.3 multiplier).

### 5.4. Factor 3: Contingent nature of fees.

Plaintiff's counsel undertook this representation on a purely contingent basis. Plaintiff's counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiff's counsel should be compensated for this risk. *See*, *e.g.*, *Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804, 814 (W.D. Mich. 2003) (explaining a contingency justifies a higher fee). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to

take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiff's counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Ardent could have succeeded. Therefore, Plaintiff's counsel was at great risk for non-payment for all work performed.

Courts have also approved of similar percentage-of-the-fund approaches when examining the same general fee structure proposed by Plaintiffs here, where fees are determined as a percentage of the new money not inclusive of the debt forgiveness to class and collective members. *E.g.*, *Thornton*, No. 5:22-cv-05077, ECF No. 64 (awarding 40% of new cash to collective, which was 17% of common fund); *Futrell*, No. 0:22-cv-00969-JRT-DJF, ECF No. 69 (awarding 40% of new cash to collective, which was 4.6% of common fund); *Marshall*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (awarding 40% of new cash to class and collective, which was 18.69% of common fund); *Estevez*, No. 3:22-cv-00327, ECF No. 35 (awarding 40% of new cash to collective, which was 35.5% of common fund); *Woodruff*, No. 3:22-cv-00333, ECF No. 31 (awarding 40% of new cash to collective, which was 19.66% of common fund); *Sanchez*, No. 3:22-cv-00864-E, ECF No. 21 (awarding 40% of new cash to collective, which was 23% of common fund).

Moreover, Plaintiff's agreement with counsel allowed Plaintiff's counsel to seek a 40% contingency in the amount of all monetary value obtained by way of the claims. Ex. B, Parmet decl., at ¶ 40. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted); *Barnes v. Winking Lizard, Inc.*, No.

1:18CV952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (same). Yet Plaintiff's counsel's request for fees voluntarily limits that request to the new settlement fund, reducing the fees they would be entitled to seek to only new money obtained and not the monetary value released by Ardent. That voluntary reduction from what counsel would be entitled to is evidence of the reasonableness of the fee. *See*, *e.g.*, *Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277, at *3 (W.D. Tenn. May 22, 2012) ("[T]he fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement.").

This factor thus favors approval of the requested fees.

### 5.5. Factor 4: Society's interest in compensating successful attorneys.

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Plaintiff's counsel took on this matter to represent Hill and similarly situated workers in their wage claims against Ardent. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### 5.6. Factor 5: Complexity of the litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (internal citation omitted). Had the case not settled, the parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment.

#### 6. Plaintiff's counsel is entitled to recover reasonable costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Plaintiff's counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case.

| Expense | Amount |
|---|---|
| Court/Government Agency | $ 660.00 |
| Service | $ 100.00 |
| Copies | $ 20.75 |
| Postage & Delivery | $ 141.57 |
| Travel and Incidental | $ 40.04 |
| Legal Research | $ 3,021.88 |
| Online Research | $ 251.00 |
| Mediation | $ 15,600.00 |
| **Total** | **$ 19,835.24** |

## E. CONCLUSION

For these reasons, the Court should approve the settlement reached by the Parties as reflected in the Settlement Agreement attached as Exhibit A.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***

**Matthew S. Parmet**
TX Bar # 24069719
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**Kimberly De Arcangelis, Esq.**
Florida Bar No.: 0025871
**Morgan & Morgan, P.A.**
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email: kimd@forthepeople.com

**R. Burke Keaty, II**, BPR#027342
**Morgan & Morgan – Nashville, PLLC**
801 Broadway, Suite 105
Nashville, TN 37203
(615) 514-4205
bkeaty@forthepeople.com

**Attorneys for Plaintiffs**